**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NATHAN PIGG, | ) | No.  05-43560 |
| Debtor. | ) | |
| | ) | |
| RANESSA RENNAKER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 11-4017 |
| | ) | |
| NATHAN PIGG, | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court on the motion for contempt and other relief filed by Ranessa

Rennaker ("Rennaker") in the bankruptcy case of Nathan Pigg ("Debtor"), and the Debtor's motion

to dismiss the adversary complaint to revoke discharge and for contempt filed by Rennaker in the

adversary proceeding.

Both Rennaker's motion for contempt and her complaint to revoke the Debtor's discharge

arise from the same facts and seek similar relief.  The undisputed facts show that on June 17, 1999,

in connection with a marriage dissolution proceeding between the Debtor and Rennaker, the Circuit

Court for the Second Judicial Circuit in Jefferson County, Illinois, entered an order which directed

the Debtor to pay a child support obligation to Rennaker of $314 per month, payable at the rate of

$144.94 every two weeks, until June of 2010.  The Debtor made these payments in a fairly regular

fashion until October 2005, when he became delinquent in his support obligation.  Rennaker alleges

that from October 2005 through August 2009, the Debtor made no payments on his support

obligation.  Rennaker further alleges that from August 2009 to August 2010, monthly payments of

$69.20 were applied to the arrearage, and the amount of unpaid child support and unpaid interest

(accruing at 9% per annum) due and owing as of December 15, 2010, was $8,457.41.

The Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2005. The Debtor's order of discharge was entered on March 7, 2006. When the Debtor filed his bankruptcy petition, he was pursuing a claim for wrongful discharge against his employer, the City of Mount Vernon, Illinois.[1] The Chapter 7 Trustee employed counsel to prosecute the wrongful discharge claim. On October 3, 2008, the bankruptcy court entered an order approving the Trustee's settlement of the wrongful discharge case for $50,000. Upon learning that the Debtor might receive some funds from the settlement in the wrongful discharge case, on November 8, 2008, Rennaker filed a proof of claim in the Debtor's bankruptcy case for child support arrearage in the amount of $10,029.89.[2]

While his wrongful discharge case was pending, the Debtor had moved in the state court to modify the child support order on the grounds that he was no longer employed and was seeking to obtain social security disability benefits. The Debtor sought to modify both the monthly support payment as well as his obligation to provide health insurance. Around the same time, Rennaker had filed a petition in the state court to reduce the child support arrears to judgment and to intercept any payments from the wrongful discharge case before the Debtor might receive and spend the money. After holding a hearing on both motions on December 4, 2008, the state court abated the child support obligation from May 2008 until further order of the court, noting that the Debtor was on a bare income of $550 per month pending a hearing on his disability claim. The state court's docket entry also stated:

---

[1] Although the record is not clear regarding the details, it appears the Debtor also had a pending claim for social security disability.

[2] It appears that most, if not all, of the claimed child support arrearage accrued after the Debtor filed his bankruptcy petition.

> Respondent Nathan Pigg has settled Case 07-374-GPM for $50,000.00 with the
> funds being in Bky # 05-43560 Southern District of Illinois.  In the event any sums
> are distributed to Nathan Pigg, they are to be delivered to his attorney Larry Gibson
> to be held in his client's trust fund account until further order of the Court.[3]

After the state court entered the above docket notation, the Trustee then objected to Rennaker's claim on the grounds that it had been superceded by the December 4, 2008, state court order providing for turnover of any surplus funds to be held in the Debtor's attorney's trust account until further order of the state court.  Thereafter, the Trustee filed her final report, which included her proposed distribution of funds in which the Trustee noted that any alimony and child support funds due to the Debtor would be delivered to the Debtor's attorney, Larry Gibson.  The Bankruptcy Court entered an order approving the Trustee's final report and proposed distribution.  After the Trustee paid all allowed claims in full, there remained a surplus of $13,307.23, and a check in that amount was mailed from the Trustee's office directly to the Debtor at his home address.  Upon learning that the Debtor had endorsed the check but had not turned over the check to Larry Gibson, the Trustee filed a motion to compel the Debtor to turn over the funds to determine what had happened to the check.  At a hearing on the motion to compel, the Trustee learned that the Debtor had cashed the check and spent the funds.

Rennaker first filed a motion for contempt and other relief alleging that the Debtor spent the settlement proceeds in violation of the state court order and in violation of the bankruptcy court's order approving the Trustee's proposed distribution.  At the hearing on her motion, this Court asked Rennaker's attorney what relief she was seeking, and Rennaker's attorney responded that she wanted the Debtor's discharge set aside.  This Court informed Rennaker that such relief had to be sought by an adversary proceeding.  *See* FED. R. BANKR. P. 7001(4).  On February 22, 2011,

---

[3]Larry Gibson did not represent the Debtor in this bankruptcy proceeding.

Rennaker filed an adversary complaint to revoke the Debtor's discharge under § 727(d)(1) and (2) and, alternatively, for contempt.[4]  In response, the Debtor filed a motion to dismiss the adversary complaint on the grounds that it was not timely filed.

At the hearing on the motion for contempt and the motion to dismiss the adversary proceeding, the Debtor asserted that the adversary complaint was untimely filed because the discharge had been in effect since March 7, 2006.  The Debtor also noted that the allegations in the complaint involved a state court matter that was still pending; therefore, there was no final order that could give rise to a contempt proceeding.  The Debtor did not dispute that he received the money, but argued that he was not very sophisticated and did not know why he received the money, so he spent it.  Therefore, there was no evidence of intentional, knowing wrongdoing on his part that would warrant the sanction of contempt.  Finally, the Debtor argued that any question of whether the Debtor should be held in contempt for alleged non-payment of child support was more properly resolved in the state court.

Rennaker responded that the Debtor was well aware that the check was supposed to go to his personal injury attorney, Larry Gibson, to be held in his trust account.  Rennaker acknowledged that the limitations period set forth in § 727(e) is one year after the discharge is granted, and that in this case all of Debtor's actions occurred five years after the discharge was granted.  Rennaker argues that the Debtor's conduct related to property of the estate, and therefore the Debtor should be sanctioned by not being allowed to retain his discharge.

This Court will first address the motion for contempt filed by Rennaker.  Section 105(a) provides that the bankruptcy court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, thus granting broad powers to

---

[4]The Debtor filed his bankruptcy petition on October 14, 2005, before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Accordingly, all citations will be to the Bankruptcy Code as it existed at the time the Debtor filed his petition, unless otherwise noted.

bankruptcy courts to implement the provision of the Bankruptcy Code and to prevent an abuse of the bankruptcy process. *Matter of Volpert,* 110 F.3d 494, 500 (7th Cir. 1997). Additionally, the power of contempt is inherent in all courts, and bankruptcy courts can impose sanctions and make findings of civil contempt. *See, e.g., In re Hancock*, 192 F.3d 1083 (7th Cir. 1999); *Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995). The purpose of civil contempt proceedings is to secure compliance with a prior order of the court. *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). Courts have inherent and statutory powers to punish a party that fails to comply with the terms of its orders, and to coerce compliance with such orders. *In re Gage*, 394 B.R. 184, 196 (Bankr.N.D.Ill. 2008). Civil contempt is triggered when a party violates a court order or a statutory injunction that becomes effective by the entry of an order. *In re Consolidated Industries*, 360 F.3d 712, 716 (7th Cir. 2004); *Cox v. Zale Delaware, Inc*., 239 F.3d 910 (7th Cir. 2001). To support a finding of civil contempt, the complaining party must demonstrate by clear and convincing evidence that the responding party has violated the express and unequivocal command of a court order. *D. Patrick, Inc. v. Ford Motor Co*., 8 F.3d 455, 460 (7th Cir. 1993). Violation of the court order does not have to be "willful" to find a party in contempt. *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989). Rather, it must be found that the offending party knowingly violated a specific order of the court. *In re Johnson*, 148 B.R. 532, 538 (Bankr.N.D.Ill. 1992). Without a court order specifying what must be done, there can be no civil contempt. *Matter of Rimstat, Ltd.*, 208 B.R. 910, 913 (Bankr.N.D.Ill. 1997).

In her motion for contempt, Rennaker contends that the Debtor violated both the state court's order/docket entry dated December 4, 2008, and the bankruptcy court's approved final report, both of which provided that any funds delivered to the Debtor were to be delivered to his personal injury attorney and held in the attorney's trust fund account until further order of the state court. She seeks

to have the Debtor held in contempt of court for these violations.

The order/docket entry directing that the Debtor turn over any settlement funds received to his personal injury attorney was entered by the state court, not this Court. This Court does not have jurisdiction to hold a person in contempt for violating an order entered by another court, but may only enforce its own orders through its inherent civil contempt powers. Accordingly, Rennaker must seek enforcement of the order/docket entry of the state court in the court that issued the order. *See Gage*, 394 B.R. at 196.

Rennaker also asserts that the Debtor also violated this Court's order approving the Trustee's final report and proposed distribution. However, this order merely approves the Trustee's proposed distribution; it does not order the Debtor to take any action and does not specifically mention the settlement funds. The reference to the settlement funds is found in the Trustee's proposed distribution, which disallows Rennaker's claim, noting that pursuant to the state court's order, any settlement funds due to the Debtor would be turned over to the Debtor's attorney, Larry Gibson. Thus, there is no "express and unequivocal" order of this Court specifying any action to be taken by the Debtor with respect to the settlement funds on which to base a finding of civil contempt. *See Rimstat,* 208 B.R. at 913. For all the reasons set forth above, Rennaker's motion for contempt is denied.

This Court will now turn to the Debtor's motion to dismiss the adversary complaint to revoke discharge on the grounds that Rennaker's claims are time-barred. As noted above, Rennaker filed an adversary complaint to revoke the Debtor's discharge under §§ 727(d)(1) and (2). As it existed at the time the Debtor filed his bankruptcy petition, § 727(d) provided:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such

> discharge;
>
>> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

11 U.S.C. § 727(d)(1), (2).  Section 727(e) provides the time limits on requesting a revocation of a

debtor's discharge:

>> (e) The trustee, a creditor, or the United States trustee may request revocation of a discharge –
>>
>>> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or
>>>
>>> (2) under subsection (d)(2) . . . of this section before the later of –
>>>
>>>> (A) one year after the granting of such discharge; and
>>>> (B) the date the case closed.

11 U.S.C. § 727(e).

In her complaint, Rennaker invokes both § 727(d)(1) and (d)(2) as grounds for revoking the

Debtor's discharge.  On the face of the complaint, her claim under § 727(d)(1) alleging the Debtor's

discharge was obtained through fraud, is clearly time barred as it was brought on February 22, 2011,

which is clearly more than one year after the discharge was entered on March 7, 2006.  *See* 11

U.S.C. § 727(e)(1).  Accordingly, the Debtor's motion to dismiss Rennaker's claim for revocation

of the Debtor's discharge under § 727(d)(1) is granted, and Rennaker's § 727(d)(1) claim is hereby

dismissed as untimely.

However, Rennaker's claim under § 727(d)(2) alleging the Debtor acquired property of the

estate and knowingly and fraudulently failed to report the acquisition of such property and failed to

report or surrender such property to the Trustee, is not time-barred under § 727(e)(2).  Section

727(e)(2) provides that a claim under subsection (d)(2) must be brought before the later of one year

after the granting of discharge or the date the case is closed.  The Debtor's bankruptcy case has not

yet been closed, so Rennaker's action to revoke the Debtor's discharge under § 727(d)(2) is not untimely filed, and may not be dismissed on that basis. The Debtor's motion to dismiss Rennaker's §727(d)(2) claim as time-barred is denied.

Even though not raised by the Debtor, there is an additional reason why Rennaker's complaint to revoke discharge under § 727(d)(2) must be dismissed: based on the facts as pleaded, Rennaker's § 727(d)(2) claim fails to state a cause of action. As noted above, § 727(d)(2) provides for revocation of debtor's discharge if the debtor acquired or became entitled to acquire property of the estate and knowingly and fraudulently failed to report such acquisition or entitlement to such property or to deliver or surrender such property to the trustee. *See* 11 U.S.C. § 727(d)(2). According to the facts as pleaded in the complaint, the Trustee knew about the wrongful discharge suit, employed an attorney to prosecute the suit, settled the suit, received the settlement funds and paid the creditors of the Debtor's bankruptcy estate, and refunded the surplus settlement proceeds to the Debtor. Thus, on its face, the facts in the complaint clearly show that what transpired does not fit under § 727(d)(2). The Debtor did not acquire property of the estate; instead, the Trustee acquired estate property, paid creditors, and refunded the surplus to the Debtor. There are no grounds to revoke the Debtor's discharge, and Rennaker's § 727(d)(2) claim is dismissed.

This Court notes that based on the facts as pleaded, most, if not all, of the child support obligations that Rennaker is seeking to enforce accrued after the date the Debtor filed his petition for relief under Chapter 7, and were not discharged as part of his Chapter 7 bankruptcy. To the extent that any of the child support obligations may have accrued before the petition date, the version § 523 (a)(5) in effect at the time the Debtor filed his bankruptcy petition provided that a discharge under § 727 did not discharge the Debtor from any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record . . . ."

8

*See* 11 U.S.C. § 523 (a)(5).  Thus, either way, the Debtor's child support obligations to Rennaker were not discharged in his bankruptcy proceeding.  Because neither the automatic stay nor the discharge injunction prevents the state court from making a determination on the child support issues, Rennaker is free to pursue any contempt or other enforcement actions in the state court.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  Separate Orders will be entered.


ENTERED: August 29, 2011

_____/s/ William V. Altenberger_____
UNITED STATES BANKRUPTCY JUDGE